All right, our final case for this morning is Casas v. Attorney General Merrick B. Garland. Mr. Thoman. Thoman, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Daniel Thoman. I represent the petitioner, Jovani Casas, in this case. On appeal, the petitioner raises two issues for review by this Court. The first is whether the Department of Homeland Security deprived her of due process through the manner in which it reinstated her 2008 removal order. And the second is whether the Department of Homeland Security and the immigration judge incorrectly applied the reasonable fear standard in her case, preventing her from advancing to a withholding of removal application. Regarding the first issue, the facts do not appear to be in dispute as far as what the claim deficiency is in this case. The reinstatement regulations at CFR 241.8 spell out the process that the agency has to follow in order to reinstate a prior removal order pursuant to 8 U.S.C. 1231.85. So, Mr. Thoman, everybody seems to agree that the paperwork was flawed here, that she learned about it the day after it happened, and then something else happened six months later. But the government pushes pretty hard on the argument that she has not in any way shown prejudice from that. And on page 12 of their brief, that she hasn't challenged the conclusions that she is not a citizen, that she was removed while subject to a prior removal order, and that she reentered the United States illegally. And they say with those three things beyond dispute, there's simply no adverse effect from the procedural flaws you've pointed out. Thank you, Your Honor. And the government is correct that the petitioner does not challenge those specific requirements for the validity of the reinstatement order. But those challenges are not the only thing that can cause prejudice for purposes of a due process violation determination. It sounds like it's kind of a bare procedural allegation with no substance behind it. Can you explain what prejudice you're relying on? Well, Your Honor, in this case, and the facts unfortunately are not the clearest when it comes to the substance of her claim, because there was an eight-year delay from when the government began the proceedings and when this actually moved forward. But it is clear that the kidnapping and presumed death of her stepfather and uncle may have been right about the time in 2013 when she was actually brought in to sign the part of the form that states that she's been advised of this and does not indicate whether she wishes to respond or not. So one thing, just looking at the facts, and this was not developed in the brief, is essentially that there is the possibility that at that time her recollection would have been fresher. Throughout the interview before the asylum officer and the immigration judge, she did not remember a lot of the details about what had happened back in 2013 or 2014. Those sound like pretty big events, though, to slip your mind. They are, Your Honor, but again, as she stated, that her sister had been in hiding for a while. Again, we don't know what the reason is. I think the passage of time might be the reason that she simply forgot. But that is something that would have been able to emerge during an actual withholding of removal hearing where those issues could have been developed rather than through the screening process of the reasonable fear review determination. But, Your Honor, the main part with regard to prejudice that we discuss in the brief is the fact that in matter of Garcia Flores, 17 INN Decision 325, the Board of Appeals in 1980 made it very clear that prejudice can be presumed where a statutory framework or a regulatory framework is intended to protect the rights of an individual and the government fails to follow those procedures. And in the case of the regulation of 241.8, as we note in the brief, the Federal Register at the time of the promulgation shows that the main purpose of it was to protect the rights of individuals to prevent them from being removed in violation of the United States obligation under the Torture Convention. So you must be saying, I mean, you're conceding that she is, apart from the Torture Convention, she's removable. And she has the first couple of steps that she's given to have her interview from the Immigration Agency, the Department of Homeland Security. She has her screening proceeding before the immigration judge, and she doesn't kind of get over the prima facie, some initial hurdle, however they want to phrase it. But she is now having an opportunity to have this court take a look at that decision of the immigration judge. And I just, aside from just speculative things, you haven't really pointed us to anything concrete that would allow us to say that the immigration judge should have moved things on to a full-blown hearing. Well, Your Honor, I plan to address that in my second point, but if the court likes, I can... No, go for it. That's fine. That's okay. I just want to point out, finally, with regard to due process, that if the government is allowed to completely ignore the regulation requiring them to give notice and an opportunity to respond, that flies in the face of the Supreme Court's decision in Matthews v. Eldridge, noting that the fundamental premise of due process is a meaningful opportunity at a meaningful time. And that would have been the time when the notice was first issued and developed. So what's the remedy for that? Your Honor, in this case, the reinstatement, for one thing, the order should be rescinded. If the government wishes to then again try again to reinstate the 2008 order, they will be able to do so, but they would have to follow the procedures in place. Now, in this case, that actually could benefit the petitioner in light of the fact that she was removed while this case was pending. So she would now be in a better position, and as I understand, she has been in hiding as well. She may have additional evidence or refresh recollections that would help her if this process is restarted. So there is a potential for a different outcome. Were you able to check with her before this argument whether there were like just in the sense of almost a proffer or, you know, that there might be something? No, Your Honor, I do not have her contact information in Mexico. So that's why we think that the agency should be held to account for such an egregious violation of the regulations. And by that, I don't mean that the consequence is egregious, although I do think reinstatement is. But in this case, the dates are all over the place. The notice of intent was issued the day after the final order was issued, and she did not have an opportunity to respond apparently for another year, and then the matter was executed eight years later. So the agency can do that. I think that by rescinding the order and forcing them to start over, this court would send a message to the agency that it must follow these procedures because they're intended to protect individuals. Moving on to the second point, whether the department and the immigration judge incorrectly applied the reasonable fear standard, I think that, again, the facts are not really in dispute. I think that one of the biggest differences, I guess, of opinion between the government and petitioner is what the applicable standard is for review. So the government suggests that the substantial evidence standard should be applied because a reinstatement order is issued, and there is other circuit precedent, largely unpublished, suggesting that that's the appropriate standard. However, in – sorry, I forget the name every time – Guerrero-Las Barreras v. Barr, the Supreme Court in 2020, that's 140 S.C.T. 1062, made it pretty clear that the application of law to undisputed facts is a question of law, and it should be reviewed de novo. And in this case, again, the facts are not disputed. What is disputed is the standard that was applied, the way in which the judge came to the conclusion that being the stepdaughter of a police officer in Mexico who was kidnapped on duty disappeared, that that does not present a sufficient reasonable chance that she would face harm if she returned. And that's where I think the distinction is, and it does, I think, turn on which standard the court applies. All right. If there's nothing further, I'll reserve time. Thank you. Thank you. Ms. McKinney. Good morning, and may it please the Court, my name is Catherine McKinney, and I represent the Attorney General Merrick Garland in this matter. This Court should deny the petition for review because substantial evidence supports the agency's negative reasonable fear determination. The record does not compel the conclusion that Casas established a reasonable fear of persecution on account of a protected ground. She was not harmed in the past. She was not threatened in the past. She fears harm in the future from unknown assailants. While it is true that four family members of hers experienced violent and threatening conduct on four separate occasions, under this Court's precedent in Meraz-Saucedo, a causal link does not arise simply because a family group exists and some family members experience harm. But she is, but we would agree this Court has also established that a family group can be the kind of social group that the statute contemplates, and these are pretty high on the list of bad things to happen to family members. The sister has been in hiding. She apparently is in hiding. People don't do that for no reason. Why, wasn't the immigration judge a little quick to dismiss the possibility that in her particular case she would be associated with this family group and would be in danger? Well, Your Honor, the immigration judge was affirming a determination that was made by an asylum officer that no nexus had been shown. That doesn't matter. And offered the petitioner. I mean, the immigration judge is supposed to review it, though. Why have an extra step if it's just a rubber stamp? And the immigration judge did inquire with the petitioner and with petitioner's counsel, can you explain to me why there's a causal connection? And it was just because of my family membership, and as the government noted in the brief, it's not enough to simply say there are family members who've been harmed, that there has to be some evidence of motivation, and in this case the evidence is lacking in that regard. We don't know who the assailants are who kidnapped the family members. In the other two instances where the mother-in-law was held at a gunpoint and money requested from her, and on another instance the mother had someone point a gun at her, again, in all these instances we don't know who the assailants are. We don't know if the instances are connected. It's just the evidence does not compel the conclusion that there's a causation here in order to establish nexus, and without nexus she hasn't met her burden, and the agency's reasonable fair determination should be affirmed on that basis. With respect to the cat determination, this has actually been waived because there's no substantive argument in the opening brief with respect to the agency's negative determination with respect to cat eligibility. I mean, I think she is. To be fair to her, we can't divide these arguments up quite so tightly. I mean, she certainly is making a serious argument about the agency's procedural sloppiness with, and you seem to concede that this was not a model proceeding when it comes to that. When you have something that you got notice of the day after, you would think that's just the textbook example of inadequate notice for not only regulatory purposes, but actually the due process clause of the Fifth Amendment, so that's a strike against you. She's trying to say that if her story about the violence against the family members and the disappearance and the murders and all of that were credited, that sort of that's the fate that awaits her, too, if she ever comes out of hiding or if they ever find her. And so I don't think going the waiver route is fair to her presentation. The government disagrees that there was any meaningful or substantive argument with respect to whether or not she had met the torture standard. The asylum officer found that she didn't show that she more likely than not would face torture by or with government acquiescence. There's not really anything substantive with respect to anything addressing that on the substance of government acquiescence here. I mean, apparently the testimony before the asylum officer was that the police did take a report subsequent to the kidnapping and that the matter was still being investigated. So I guess the government would make a distinction that you've waived a substantive argument to that conclusion that you didn't meet the standard. I think the argument that's sort of a connected argument to the due process claim that I didn't have a chance to fully present my CAT claim, maybe if this paperwork had been different, I would have been able to present a more lengthy or more immediate CAT claim. That's a procedural argument and not an argument that she met the CAT standard. Right, and the government seems to have very high expectations for the kind of evidence that people can amass. I have visions of somebody at the door saying, would you mind signing in and indicating which agency you belong to and why you've decided to torture us? I mean, people don't necessarily – the torturers don't necessarily come with that kind of ID check and the like. Let me ask you a broader question. The Supreme Court has held the government to pretty stringent standards about facially deficient notices in a different context, in Perriella and Nia Chavez. How different, facially different, are the kind of notices there from a reinstatement notice and should we care? I sort of see where Your Honor is going with the notice arguments. I know in some of those cases the government had been making the argument that if you didn't receive the notice that was required and you didn't object timely earlier, I think that might be what Your Honor is referring to. And here we're making, I guess, a similar argument that the government conceded that the paperwork was not in order. I mean, that's what we can see in the record, and we conceded that it supported the argument that she was not provided an opportunity to contest the reinstatement facts. But she doesn't challenge the facts relevant to reinstatement. Those are the facts, and that would put it squarely within this Court's decision in Gomez-Chavez where this Court rejected a due process challenge to the reinstatement procedures because there were simply no facts in dispute about the reinstatement inquiry. Similarly, this Court in Cruz-Martinez also rejected a challenge to the reinstatement procedures because the facts weren't in dispute. And here the facts with respect to reinstatement aren't in dispute. Even in the brief before this Court, there's been no evidence presented that would cause to call any of those basic three facts that are relevant to reinstatement into question. And with respect to the other argument that perhaps a different, with respect to cat prejudice, that is new and presented today, the government has been arguing that there's no prejudice established here. We haven't heard any prejudice with respect to the facts relevant to reinstatement. With respect to prejudice in the cat context, an individual subject to reinstatement, if they express a fear, gets the screening mechanism with an asylum officer to make their case with respect to withholding and cat. And that is what happened here. Even though there was a passage of time when she did express a fear, she did get the screening mechanism with an asylum officer, was able to provide testimony to the asylum officer with respect to the persecution claim and the torture claim, and the asylum officer found that a reasonable possibility hadn't been shown. She asked for that determination to be reviewed with the immigration judge and, again, got that process. So that claim was heard. Well, Mr. Tolman is saying that eight-year delay does make a difference, and you're taking the position that I hear you to be saying it doesn't. Is there any kind of delay that would make a difference for the government? I'm not sure. The delay in the paperwork here, I'm not sure that that was caught. The eight-year delay was caused by the government's paperwork, so I'm not under. No, not the cause, but the difference for Ms. Casas in presenting her reasonable fear story. And the evidence is just speculative on that point, because if we have the dates where the order was reinstated was in 2012 and the dates where the acknowledgment is signed is in 2013, when the reasonable fear hearing took place and the events were recounted, what had happened to family members in Mexico, that supposedly happened in either 2013 or 2014. It was unknown if it was 2013 or 2014. We don't know if that had occurred before or after the acknowledgment. So I guess the government's response that, again, with respect to establishing prejudice, that that would be speculative, that she did get the process to have her CAT claim and her prosecution claim heard by an asylum officer as someone subject to reinstatement is entitled to do. She did get that hearing, and the government does concede that there are procedural regularities in the removal order, but here she's shown no prejudice. I did have what I realized my time was running out. I did come up with one case when I was preparing for this oral argument that's not cited in the brief. It's a Second Circuit case with very similar facts. It's Familia, and the citation is 600 Fed Epics 23. It's a 2015 case. It's unpublished. Realized it's not binding, but very similar facts were there. We had similar procedural irregularities in the date of the order, and again the Seventh Circuit came to a similar conclusion to this court did in Cruz-Martinez that where the basic facts of reinstatement were not in dispute, there was no basis to disturb the agency's order. Thank you. Thank you very much. Anything further, Mr. Tillman? I think you have about a little less than a minute. Forgive me if I move quickly here. Just three things. This just came up. Cruz-Martinez v. Sessions. I'm so sorry. I forgot to take that off. Cruz-Martinez v. Sessions, there's a significant difference in the deficiency of the order. The issue there was that there was a missing signature, but in the record there was a signed copy in the DHS record. So that's different. Here there's no argument that there's a correctly prepared order somewhere else. And finally, regarding Pereira and Ms. Chavez, it is a similar situation. The deficiency of the notice to provide the date and time of the hearing is sufficient to invalidate the proceedings, regardless of whether any relief is available or whether the individual is prejudiced. So, Your Honor, for that, Your Honors, for those reasons, we hope that you'll grant the petition. All right. Thank you very much to both counsel. The court will take the case under advisement, and we will be in recess.